# LETTER FROM Ms. KLINKER
## w/ attachments

Case 1:05-cr-00300-JMS    Document 280-2    Filed 09/07/2006    Page 1 of 9

# FAX SHEET

Date: **9/7/06**

Number of pages, including cover sheet **8**

To:
**Law Offices of Emmanuel G. Guerrero
The Second Floor
568 Halekauwila St.
Honolulu, Hawaii 96813-5027**

Phone: **808-532-2950**

Fax number: **808-545-2628**

CC: _____

From:
**Kimberley Klinker
4227 Southampton Rd
Richmond, VA
23235**

Phone: **804-272-5482**

CC: _____

REMARKS: ☑ Urgent  ☐ Reply ASAP  ☐ For Your Review  ☐ Please Comment

Please forward to Judge Re: Timothy J. Sullivan # 40391-048.

Kim Klinker

Spencer. Kelley @ colb
o
n
p

Kimberley B. (Sullivan) Klinker
4227 Southampton Road
Richmond, VA 23235
(804) 272-5482


Emmanuel G. Guerrero
The Second Floor
568 Halekauwila Street
Honolulu, Hawaii 96813-5027


Re:    Timothy J. Sullivan
       FDC #40391-048

Dear Mr. Guerrero:

    Please forward this letter to the Judge for Tim's sentencing.

    I am writing in reference to my brother, Timothy James Sullivan. Tim is the youngest of 3 children born to John Robert Sullivan and Barbara Adele Waldron. The eldest, John Michael, is a career (20+ years) U.S. Army officer currently serving in Wiesbaden, Germany. I am next and currently teach as an adjunct at Virginia Commonwealth University here in Richmond. We also have a ½ sister, Amber Leigh Wofford, who lives in Minnesota.

    I cannot pretend to know anything of my brother's involvement in this case, and am not writing to give an opinion of his guilt or innocence. I have had very little contact with my brother in the last 15 years. In fact, we have only seen each other at major family events: his wedding (Colorado), my wedding (Virginia), our sister's high school and college graduations (Oklahoma), and our Grandfather's funeral (New York). The last time I saw Tim was at our Father's funeral in New York just a few weeks before Tim's arrest. I have never been to Tim's home in Las Vegas and have met his children only twice.

    I feel a deep sense of sorrow and loss for the situation my brother now finds himself in. The man you will soon see in court, was the playmate of my childhood, the family clown, an excellent baseball player, builder of forts and catcher of fish.

    I feel that there were two important issues in my brother's life which may have had a huge impact on my brother's emotional and social development, our parent's divorce, and our father's drug and alcohol abuse. Our parents divorced when Tim was 5 years old, I was 8 and John was 11. Our mother worked shift work full-time as a nurse to support us for the next several years until she remarried. She was frequently gone during the after school hours (working 3-11 pm) and at night (working 11-7).

During this time, we were left unattended, even at night. Tim was left in the care of my brother and myself and I'm afraid we didn't make very good parents. I realize that our story is no different than that of many thousands of people, but I do feel that Tim was most severely impacted by this because of his young age.

The second important factor affecting Tim's development was the drug and alcohol use by our father, John Robert Sullivan (please find enclosed documentation from Department of Defense). Our Dad died of lung cancer on July 4th, 2006. Our father used alcohol and drugs for as long as I can remember. Some of my earliest memories are of my father playing music with his band, the scent of marijuana smoke wafting in the room. Dad used drugs in front of us, and later, with us. As a teen, my father tried to introduce me to: marijuana, hashish, mushrooms, lsd, and cocaine. Thankfully, I was able to escape this influence and succeed in college (while keeping a safe distance from my father). Tim was the only one of the three of us who ever lived with our father. He moved in with Dad during his adolescence (I was in college, John was overseas). I saw my father play beer drinking games with Tim and Tim's 12 year-old friends. According to Tim, it was during this period (approx. 1985-1987) that Dad introduced him to cocaine.

Our father, a very intelligent and gifted man, lost his security clearance (and his job at the Pentagon) due to his drug use. This event is substantiated in the enclosed documents. As far as I know, no criminal charges were ever brought against our father and most unfortunately no notice was taken of the fact that there was a teenage child living in the home and accompanying him on drug purchases.

I have known for many years that my brother was a drug addict (which is why I kept my distance). Unfortunately, I had no idea the extent to which he had become involved, or the extent to which the situation had escalated in terms of damage to his family life (he has 2 children ages 14 and 11).

I would ask that Tim be offered drug treatment and psychological counseling as part of his sentence. It is my hope and prayer that, with help and perseverance, he can eventually lead a drug-free and happy life. Tim's children and family need him to be present in their lives. I believe he deserves a chance at life without drugs and will support him in any way I can. "There, but for the Grace of God, go I," has deep personal meaning to me, as I know I could have easily fallen into the hell-hole which Tim's life has been. Thank you very much for your time and consideration in reading this letter.

Sincerely,


Kimberley B. Klinker

2



DEFENSE INTELLIGENCE AGENCY
WASHINGTON, D.C. 20301

U-4671/RSO-3C

Mr. Warren Polk
Inco, Incorporated
7916 Westpark Drive
McLean, Virginia  22101

22 MAR 1977

Dear Mr. Polk:

The Planning Research Corporation, Inco Incorporated, Bunker Ramo Corporation, and UNIVAC Corporation provided support to a government controlled team during the month of February 1977. The team was formed to complete software work on the Communications and Display Subsystem (CADS) in support of the Advanced Imagery Requirements and Exploitation System (AIRES). CADS development was significantly behind schedule and was causing a critical delay in AIRES implementation. As a result of team efforts, major CADS software and hardware problems were resolved. The CADS was declared operational and ready for total system integration on 7 March 1977.

Team members, without exception, merit recognition for their personal sacrifices and dedicated efforts. The team functioned as a select unit in a cooperative and notably productive manner. My sincere thanks for your support in terms of qualified and technically proficient personnel.

Although significant contributions were made by every team member throughout the four weeks, John Sullivan of Inco deserves special recognition. He continuously displayed a dedicated and hardworking attitude. His exceptional technical expertise and ceaseless efforts to resolve the CADS related problems are reasons for extended appreciation. Mr. Sullivan's exemplary attitude was contagious and a key factor contributing to the team's effectiveness.

Please express my appreciation to Mr. Sullivan for a job well done. His demonstrated expertise and "can do" attitude are personal attributes needed continuously throughout the few critical months remaining to accomplish the June 1977 AIRES implementation.

Sincerely,

JAMES P. DUFFY, JR.
Colonel, USA
Assistant Deputy Director for
Information Systems Operations



**DEPARTMENT OF DEFENSE**
**DEFENSE LEGAL SERVICES AGENCY**
**DIRECTORATE FOR INDUSTRIAL SECURITY CLEARANCE REVIEW**
POST OFFICE BOX 3656
ARLINGTON, VIRGINIA 22203

                                    )
In re                               )     18 AUG 1987
                                    )
   SULLIVAN, John Robert            )
   SSN: 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                 )     DISCR OSD Case No. 87-0952
                                    )
Applicant for security clearance    )
                                    )

## STATEMENT OF REASONS

A review of your eligibility for security clearance has been made pursuant to Executive Order 10865, as amended, and as implemented by DoD Directive 5220.6, and this office is unable to find that it is clearly consistent with the national interest to grant you access to any classified information and recommends that your case be submitted to an Examiner for a determination whether to deny or revoke your security clearance. This recommendation is based on the following reasons:

    1.   Criterion N: Available information tends to show illegal or improper use, possession, transfer, sale or addiction to any controlled or psychoactive substance, narcotic, cannabis or other dangerous drug on your part. That information is:

        a.   You used marijuana, with varying frequency, from about 1969 to at least January 1987.

        b.   You purchased marijuana between 1969 and January 1987.

        c.   You used LSD in 1969.

        d.   You used amphetamines in about 1978.

        e.   You used cocaine from 1984 to September or October 1986.

        f.   You purchased cocaine, every two or three months, between 1984 and September or October 1986.

        g.   You have used psilocybin mushrooms.

2.   Criterion O:  Available information reflects knowing and willful falsification, cover up, concealment, misrepresentation, or omission of a material fact from any written or oral statement, document, form or other representation or device used by the Department of Defense or any other Federal Agency on your part.  That information is:

a.   You falsified material facts on a Personnel Security Questionnaire (DD Form 49), executed by you under date of October 17, 1986, on which you were required to reply to the following question:  "18.a.  Have you ever used any narcotic, depressant, stimulant, hallucinogen (to include LSD or PCP) or Cannabis (to include marijuana or hashish) except as prescribed by a licensed physician? "; to which you answered "No"; whereas in truth and in fact, as you then and there well knew and sought to conceal, you had used marijuana, psilocybin mushrooms, amphetamines, LSD, and cocaine as set forth in subparagraphs 1.a., 1.c., 1.d., 1.e., and 1.g., above.

b.   You falsified material facts on a Personnel Security Questionnaire (DD Form 49), executed by you under date of October 17, 1986, on which you were required to reply to the following question:  "18.b.  Have you ever been involved in the illegal purchase, possession, or sale of any narcotic, depressant, stimulant, hallucinogen, or Cannabis?"; to which you answered "No"; whereas in truth and in fact, as you then and there well knew and sought to conceal, you had purchased marijuana, and cocaine as set forth in subparagraphs 1.b., and 1.f., above.

3.   Criterion H:  Available information tends to show criminal conduct on your part.  That information is:

a.   That information set forth under paragraph 2., above, which constitutes violation of Federal law, Title 18, United States Code, Section 1001, a felony.

4.   Criterion I:  Information set forth under paragraphs 1., 2. and 3., above, tends to reflect acts of omission or commission that indicate poor judgment, unreliability or untrustworthiness on your part.

The criteria cited above will be found in Section F.5. of the referenced DoD Directive 5220.6.

*[signature]*

Charlene M. Krohn
Chief, Personnel Security Division



DEPARTMENT OF DEFENSE
DEFENSE LEGAL SERVICES AGENCY
DIRECTORATE FOR INDUSTRIAL SECURITY CLEARANCE REVIEW
POST OFFICE BOX 3656
ARLINGTON, VIRGINIA 22203

Mr. John R. Sullivan
c/o Advanced Technology Systems
8027 Leesburg Pike
Vienna, VA 22180

18 AUG 1997

Dear Mr. Sullivan:

The matter of your eligibility for security clearance has been referred to this office in accordance with DoD Directive 5220.6 (copy enclosed). The enclosed Statement of Reasons recommends that it is not clearly consistent with the national interest to grant the security clearance requested for you or to continue any security clearance previously granted to you. Before a decision is made whether to grant, deny or revoke security clearance for you, YOU MUST do the following:

1. Answer the Statement of Reasons and admit or deny each allegation in each paragraph and subparagraph. You may provide explanation with your answer.

2. State whether or not you wish to have a hearing.

3. Sign your completed answer under oath or affirmation before a Notary Public.

4. Return your complete, signed, notarized answer within 20 days of receipt of this letter to DISCR, P.O. Box 3656, Arlington, VA 22203.

IF YOU WISH TO HAVE A HEARING, it will be held near where you live or work in the United States before a Hearing Examiner who will make the final decision in your case. An Attorney for the government will present evidence and argument supporting the Statement of Reasons. You may appear without counsel or with your attorney. You may cross examine witnesses and introduce evidence in your own behalf.

IF YOU DO NOT WISH TO HAVE A HEARING, the documentary information supporting the Statement of Reasons will be presented to the Examiner. You will be given a copy of this information and will have 20 days to submit your rebuttal to the information to the Examiner, who then will make a final decision in your case.

IF YOU DO NOT ANSWER PROPERLY, as described in subparagraphs 1 to 4, above, within 20 days of receipt of this letter, processing of your case will be discontinued, any clearance that may have been issued to you will be suspended, any pending clearance requested for you will be denied, and your employer will be notified of these actions.

If your employer does not require that you have a security clearance for access to classified information, notify this office and further processing of this matter will be discontinued and any existing clearance you have will be terminated.

Direct any questions you may have on procedures for answering the Statement of Reasons to Department Counsel on telephone-commercial area code 202 696-4751.

Sincerely,

Charlene M. Krohn
Chief, Personnel Security Division

Enclosures